IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

May 3, 2010

RE: RYHEIM HILL V. MICHAEL D. KLOPOTOSKI, ETAL
CA No. 09-3774

## NOTICE

Enclosed herewith please find a copy of the Report and Recommendation filed by United States Magistrate Judge Hart, on this date in the above captioned matter. You are hereby notified that within fourteen (14) days from the date of service of this Notice of the filing of the Report and Recommendation of the United States Magistrate Judge, any party may file (in duplicate) with the clerk and serve upon all other parties written objections thereto (See Local Civil Rule 72.1 IV (b)). **Failure of a party to file timely objections to the Report & Recommendation shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court Judge.**

In accordance with 28 U.S.C. §636(b)(1)(B), the judge to whom the case is assigned will make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The judge may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge, receive further evidence or recommit the matter to the magistrate judge with instructions.

Where the magistrate judge has been appointed as special master under F.R.Civ.P 53, the procedure under that rule shall be followed.

MICHAEL E. KUNZ
Clerk of Court

By:
LINDA V. JERRY, Deputy Clerk

cc: GREEN
DUNLAVEY

Courtroom Deputy to Judge Fullam

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RYHEIM HILL | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL D. KLOPOTOSKI, et al. | : | NO. 09-3774 |

## REPORT AND RECOMMENDATION

JACOB P. HART
UNITED STATES MAGISTRATE JUDGE April 29, 2010

This is a pro se petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by an individual who is currently incarcerated at the State Correctional Institution at Dallas, Pennsylvania. For the reasons that follow, I recommend that the petition be denied.

### I. FACTS AND PROCEDURAL HISTORY:

On January 28, 2004, following a jury trial presided over by the Honorable James A. Lineberger of the Philadelphia Court of Common Pleas, Petitioner, Ryheim Hill, was convicted of first degree murder and possession of an instrument of crime. He was sentenced to life imprisonment. On August 3, 2005, the Pennsylvania Superior Court affirmed his conviction. Commonwealth v. Hill, 885 A.2d 576 (Pa. Super. Aug. 3, 2005) (table). The Pennsylvania Supreme Court denied allocatur on December 30, 2005. Commonwealth v. Hill, 892 A.2d 822 (Pa. Dec. 30, 2005).

The facts as set forth by the trial court are as follows:

On May 2, 2002, Madelin Bing was in the 3800 block of North Percy Street in Philadelphia where she got into an argument with a man named Shamp over money that she supposedly owed to him from the sale of crack cocaine. Ms. Bing phoned her boyfriend, requesting that he meet her and walk her home. (Ms. Bing's boyfriend was referred to by name at trial as Tyrone Smith, Ahmir Smith and Germain Newton. For the purposes of this opinion he will be hereinafter referred to as Tyrone or Mr. Smith.) Mr. Smith arrived shortly afterwards on a bike and began walking her home.

While walking her home the male named Shamp appeared along with the defendant and two other males. Mr. Smith suddenly dropped his bike and began running away. He was being chased by the defendant who shot at him at least five times striking him in his back and his right and left leg. At the time of the shooting Police Officer Harvey Bass was en route to answer a call on another case when he heard 5 or 6 gunshots come from the top of 3800 North Percy Street. After putting information over police radio, Officer Bass observed four males in the middle of the street. One of the males fell to the ground while the others scattered. Officer Bass approached Mr. Smith who had fallen to the ground after being shot. Madelin Bing was kneeling over Mr. Smith. She was crying and screaming that a male that she knew as Ryheim had shot her boyfriend, Tyrone Smith. Officer Bass took a statement on the scene from Ms. Bing. Less than a minute after receiving the radio call of the shooting, Officer Wanda Rowe met briefly with Officer Harvey Bass who was attending to Mr. Smith. Officer Rowe encountered a female named Barbara Guzman who said that she witnessed the shooting. She was crying and speaking in a high voice. Ms. Guzman said that she saw a male that she knew as Ryheim or Bryheem shoot Tyrone Smith. A statement was taken from Ms. Guzman at the crime scene. Officer Rowe testified that she observed seven shell casings in the area. Ms. Bing accompanied Mr. Smith to the hospital where he was subsequently pronounced dead. Detective Robert Weaver and Sergeant Nicholas Brown each took separate statements from Barbara Guzman in the early morning hours following the shooting. At the time of these statements, Ms. Guzman was asked and gave correct biographical information and she gave responsive answers to all questions in which she identified both Mr. Smith and the defendant by name. Both Detective Weaver and Sgt. Brown testified at trial that they did not smell alcohol on Ms. Guzman's breath nor did she appear to be high or intoxicated. Ms. Guzman signed both statements in which she stated that she saw the defendant chasing Mr. Smith and shooting him multiple times. Ms. Guzman was also shown a photo of the defendant which she identified as the male she knew as Bryheim or Ryheim. Detective Michael Gross took a statement from Madelin Bing inside East Detective Division. At the time of this statement, Ms. Bing was asked and provided correct biographical information. Ms. Bing gave responsive answers to questions posed to her and showed no indication of being high or under the influence of alcohol. Ms. Bing identified the defendant by photo and referred to him by name as the person who had just shot her boyfriend, Tyrone Smith. An arrest warrant was signed on May 2, 2002 for the defendant's arrest. Detective Leon Lubiejewski testified that officers went to three separate locations on May 3, 2002 in an unsuccessful attempt to arrest the defendant. Detective Johnm Benhan testified to leaving numerous messages at the home of the defendant's relatives that there was a warrant for his arrest. On August 26, 2002, acting upon information received, Detective Benhan arrested the defendant who was found hiding in the basement of his mother's house.

Respondent's Exhibit A at pp.1-3.

On June 12, 2006, Hill filed a petition for collateral relief under the Pennsylvania Post-Conviction Relief Act, 42 Pa.C.S. § 9545, et. seq. ("PCRA"). On March 27, 2007, appointed counsel filed an amended petition on Hill's behalf, alleging that his trial counsel was ineffective for (1) failing to object to comments made by the prosecutor during closing arguments; (2) failing to call Kyesha Majett as an alibi witness; and (3) failing to call Tamika Moore to impeach one of the Commonwealth's witnesses. The petition was dismissed on November 8, 2007. On January 28, 2007, following a notice of Appeal, the PCRA court issued an opinion dismissing the petition as meritless. On November 21, 2008, the Superior Court issued a memorandum opinion, affirming the dismissal of the petition. Commonwealth v. Hill, 964 A.2d 942 (Pa. Super. Nov. 21, 2008) (table) (Respondent's Exhibit D). The Supreme Court denied allocatur on June 17, 2009. Commonwealth v. Hill, 973 A.2d 1005 (Pa. June 17, 2009).

On August 13, 2009, Hill filed the instant petition for writ if habeas corpus. He alleges the following claims for relief: (1) the state court erred by allowing the jury to have the crime scene log during deliberations; (2) trial counsel was ineffective for failing to properly object to prosecutorial misconduct during closing argument; (3) trial counsel was ineffective for failing to call witness Tamika Moore to rebut testimony of Madelin Bing; and (4) trial counsel was ineffective for failing to call Tyesha Majett as an alibi witness; (5) ineffective assistance of counsel for failing to investigate on scene witness Terdell Robinson; (6) ineffective assistance of counsel for failing to request a mistrial and/or request a cautionary instruction as to inadmissible evidence from Officer Wanda Rowe; and (7) ineffective assistance of counsel for failing to object to the prosecutor's closing argument because of statements regarding the truth or falsity of Guzman's testimony.

3

## II. STANDARD OF REVIEW:

Under the current version of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In Williams v. Taylor, 529 U.S. 362, 404-405, 120 S. Ct. 1495 (2000), the United States Supreme Court interpreted this statute and more clearly defined the two-part standard of review. Under the first prong of the review, a state court decision is "contrary to" the "clearly established federal law, determined by the Supreme Court of the United States," (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to that reached by [the Supreme Court]." Id. at 405. Pursuant to the second prong, a state court decision can involve an "unreasonable application" of Supreme Court precedent: (1) "if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "if the state court either unreasonably extends a legal principle from our precedent to a new context

where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407-408.

## III. DISCUSSION

### A. EXHAUSTION/ PROCEDURAL DEFAULT

The procedural default barrier, in the context of habeas corpus, precludes federal courts from reviewing a state petitioner's habeas claims if the state court decision is based on a violation of state procedural law that is independent of the federal question and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553 (1991). "If [a] petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would not find the claims procedurally barred . . . there is procedural default for the purpose of federal habeas . . ." Coleman, 501 U.S. at 735 n.1; McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999).

To survive procedural default in the federal courts, the petitioner must either "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Id. at 750. To establish the fundamental miscarriage of justice exception, petitioner must demonstrate his "actual innocence." Schlup v. Delo, 513 U.S. 298, 324, 115 S. Ct. 851, 865 (1995); Calderon v. Thompson, 523 U.S. 558, 559, 118 S. Ct. 1489 (1998). "'To be credible' a claim of actual innocence must be based on reliable evidence not presented at trial." Id. On the other hand, a showing of cause demands that a petitioner establish that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Coleman, 501 U.S.

5

at 753. Once cause is proven, petitioner must also show that prejudice resulted from trial errors that "worked to [petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494, 106 S. Ct. 2639, 2648-49 (1986).

Hill acknowledges that he failed to exhaust all but the first four claims raised in his petition and that he is now unable to return to state court. He argues that we should excuse the procedural default of his three additional claims because his failure to exhaust these claims in state court was a result of ineffective assistance of his PCRA counsel. He states as follows:

> The petitioner avers that the cause for these claims not being exhausted in state court was a result of first PCRA counsel['s] failure to raise these claims on post conviction collateral appeal which in turn caused the petitioner to petition the Pennsylvania Superior Court as a pro se appellant submitting a Motion for Remand and Appointment of New Counsel for PCRA Counsel's Failure to Raise Meritorious Issues on Petitioner's First Timely filed PCRA Petition. The Pennsylvania Superior Court denied the Motion by Order on March 13, 2008 docketed at No. 3131 EDA 2007, but directed PCRA appeal counsel to Commonwealth v. Lawrence, 596 A.2d 165 (Pa. Super. 1991) which explained counsel's obligation to petition the court for remand upon review of pro se allegations of ineffectiveness. See also Commonwealth v. Battle, 879 A.2d 266 (Pa. Super. 2005) which requires counsel to file a petition for remand to insure that the ineffectiveness claims are presented to the court. The PCRA counsel failed to adhere to the Pennsylvania Superior Court Order, thus, prejudicially causing the petitioner meritorious claims of trial counsel ineffectiveness not to be exhausted in state court.

Petitioner's Brief at pp. 44-45.

However, a claim of ineffective assistance of counsel can only serve as "cause" to excuse procedural default if the claim is presented as an independent claim in state court and is itself exhausted, which petitioner has failed to do in this case. See Edwards v. Carpenter, 529 U.S. 446, 451, 120 S.Ct. 1587 (2000); Murray v. Carrier, 477 U.S. at 488, 106 S. Ct. 2639. Furthermore, claims of ineffective assistance of PCRA counsel cannot serve as "cause" to excuse procedural default. See Pennsylvania v. Finley, 481 U.S. 551, 554, 107 S. Ct. 1990 (1987). A federal court

6

may review habeas claims of state prisoner's only to the extent that they raise violations of the Constitution or laws or treaties of the United States. See 28 U.S.C. § 2254(a). Pursuant to 28 U.S.C. 2254(i), claims of ineffective assistance of PCRA counsel are specifically excluded from federal habeas relief. As there is no constitutional right to the assistance of counsel in post-conviction collateral proceedings, ineffective assistance does not give rise to a Constitutional violation. See Finley, 481 U.S. at 555.

Hill has failed to establish cause and prejudice to excuse the procedural default. He has also failed to present any new and reliable evidence of his "actual innocence". See Schlup v. Delo, 513 U.S. at 324. Accordingly, claims five through seven remain procedurally defaulted.

### B. MERITS Of REMAINING CLAIMS

#### 1. Admission of Crime Scene Log:

In Hill's first claim he asserts that the trial judge abused his discretion by allowing the jury to have the crime scene log during deliberations over the objection made by Hill's counsel. The crime scene log lists the name of two witnesses, Barbra Guzman and a second witness, Terdell Robinson, who did not testify. It also lists the suspect as "Raheem or Bryheem", contains a brief summary of Guzman's statement, and lists the names of the officers at the scene. Respondent's Exhibit E. Hill alleges that the report contains hearsay and allowed the jury to infer that Terdell Robinson would have corroborated the police statements of Guzman and Bing who did not adopt their statements at trial. He also asserts that it was reasonable for the jury to infer that Terdell Robinson did not testify because she was afraid to do so. Hill argues that allowing the jurors to have the crime scene log without deleting Terdell Robinson's name violated the confrontation clause

7

under the Sixth Amendment, pursuant to Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004).

Hill raised this same issue on direct appeal. The state court denied his claim, finding that the judge had not committed an abuse of discretion by allowing the jury to have the crime scene log along with the other items requested. The court based its determination primarily on Rule 646 of the Pennsylvania Rules of Criminal Procedure and Pennsylvania state cases. Although the state court did not reference Crawford or the Confrontation Clause, the court noted that the trial court "did not provide anything that gave the jury new information from another witness", as Hill had asserted. Respondent's Exhibit B (Superior Court Opinion- Aug. 3, 2005) at p. 3.

To the extent that the claim Hill now presents alleges an abuse of trial court discretion, the claim is not cognizable. It is clear that violation of state law alone does not give rise to a habeas claim. Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991). The issue of whether the trial judge abused his discretion in admitting evidence and allowing it to go to the jury is strictly an issue of state law and therefore does not present a cognizable habeas claim. Id.

As to Hill's claim that allowing the jury to have the log containing Terdell Robinson's name without it being deleted or the jury being given a cautionary instruction, was a violation of the Confrontation Clause, we find that it lacks merit. Under Crawford, "just as the Sixth Amendment grants defendants the right to cross-examine those who testify in court, it prohibits the admission of out-of-court testimony unless 'the declarant is unavailable and ... the defendant has had a prior opportunity to cross-examine.'" United States v. Hinton, 423 F.3d 355, 358 (3d Cir. 2005) quoting Crawford, 541 U.S. at 59, 124 S.Ct. at 1374. This remains true regardless of whether the statement

at issue falls within a firmly rooted hearsay exception or has a particularized guarantee of trustworthiness. Crawford, 541 U.S. at 59. Therefore, if a statement is "testimonial", it is inadmissible absent a showing that the declarant is unavailable and the defendant had a prior opportunity for cross-examination. United States v. Hendricks, 395 F.3d 173, 178-79 (3d Cir.2005); see also Crawford, 541 U.S. at 56 n. 7, 124 S. Ct. 1354.

In the case at bar, as the state court noted, the log did not provide the jury with any new information. The log simply did not contain any statement, testimonial or otherwise, from Terdell Robinson, the non-testifying witness. Hill cannot demonstrate that the fact that Robinson's name was listed on the log without any statement attributed to her, violates the Confrontation Clause. There was no separate statement attributed to Robinson on the log. Respondent notes that Officer Rowe testified that the listing of the name of the suspect as "Raheem or Bryheem" was from information provided by Guzman and not Robinson. Furthermore, the court offered to redact Robinson's name and Hill's counsel argued that if Guzman's statement was not put on a separate paper, the whole log should be given to the jury, which is what was done. Given that there was no statement from Robinson on the log, the Confrontation Clause has not even been implicated. Accordingly, we do not find a violation of the Confrontation Clause and we must deny Hill's claim.

2.  INEFFECTIVE ASSISTANCE OF COUNSEL:

In Hill's remaining three claims, he alleges that his trial counsel was ineffective. In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984), the Supreme Court set forth a two-prong test — both parts of which must be satisfied — by which claims alleging counsel's ineffectiveness are reviewed. Strickland, 466 U.S. at 687.

First, the petitioner must demonstrate that his trial counsel's performance fell below an

9

"objective standard of reasonableness." Id. at 688. The court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Because of the difficulties in making a fair assessment, eliminating the "distorting effect" of hindsight, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S. Ct. 158, 163-164 (1955)). It is well established that counsel cannot be ineffective for failing to raise a meritless claim. Strickland, 466 U.S. at 691; Holland v. Horn, 150 F. Supp. 2d 706, 730 (E.D. Pa. 2001).

Pursuant to the second prong, the defendant must establish that the deficient performance prejudiced the defense. It requires a demonstration that counsel's errors were so serious as to deprive the defendant of a fair trial or a trial whose result is reliable. Strickland, 466 U.S. at 687. More specifically, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

a. <u>Ineffective Assistance of Counsel for Failing to Object to Prosecutor's Comments During Closing Argument</u>

In his second claim, Hill argues that his counsel was ineffective for failing to object to what he calls "pervasive" prosecutorial misconduct during closing arguments. In his brief in support of his petition, Hill points to the following comments made by the prosecutor during closing argument:

> The law says, Miss Bing, you don't have to be afraid, you don't have to be threatened, Miss Guzman, you don't have to be afraid, you don't have to be

threatened, because we have you. No matter what happened to you out there on the street when you went back to your neighborhood and everybody knows you went down to the police station, we have you.

Because the law says that we can use the statement that you gave to the police that was on the scene when it was fresh in your mind and fresh in your memory when you were recalling the events, when you were free from threat, when you were free from harm...

The law says that you can take this statement to the bank.

The law says, ladies and gentlemen, that we understand that you may have been threatened, even though you didn't say you were threatened.

We understand fear

Petitioner's Brief at pp. 17-18.

When Hill made this argument in state court, the state court rejected this claim, finding that there was no prosecutorial misconduct and counsel was therefore not ineffective for failing to object. Respondent's Exhibit D (Superior Court Opinion) at p. 15. Rather, the court found that the first comments made by the prosecutor during closing argument were proper rebuttle to arguments made by defense counsel during summation, during which he argued that there was no evidence that Bing or Guzman were threatened. Furthermore, the Superior Court found that the record supported the inference that Bing and Guzman were threatened, as referenced by the prosecutor. The State Court also found that when the rest of the challenged comments were reviewed in their entirety and not in isolation, they did not misstate the law. Finally, the Superior Court held that the comments were not prejudicial and any prejudice would have been cured by the cautionary instruction given to the jury. Id. at pp.3-15.

Under pertinent federal jurisprudence, we agree with the state court's conclusions. Although

Hill is not directly claiming a due process violation resulting from prosecutorial misconduct, in order to determine whether his trial counsel's failure to object was objectively unreasonable and prejudiced the outcome of this case, we must initially consider whether the prosecutor's comments during closing argument violated Hill's right to due process. U.S. v. Miles, 53 Fed.Appx. 622, 630, civ. A. No. 00-4201, 2002 WL 31501847, *7 (3d Cir. 2002) (citing United States v. Lively, 817 F. Supp. 453, 465 (D.Del. 1993)). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219, 102 S. Ct. 940, 947 (1982). A petitioner seeking a writ of habeas corpus will not succeed merely because the prosecutors' actions "were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471 (1986). Rather, to state a claim for habeas relief based upon comments at trial by the prosecutor, a petitioner must show that the prosecutor's comments were so egregious that they fatally infected the proceedings, rendered the entire trial fundamentally unfair, and made the conviction a denial of due process. Id. at 181 (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 1871 (1974)); Lesko v. Lehman, 925 F.2d 1527, 1546 (3d Cir. 1991).

A prosecutor's comments during closing arguments must be directed to an understanding of the facts and of the law rather than to passion and prejudice. Lesko, 925 F.2d at 1545 (citing United States ex rel. Perry v. Mulligan, 544 F.2d 674, 680 (3d Cir. 1976)). Nonetheless, the prosecution is "accorded reasonable latitude and may employ oratorical flair arguing its version of the case to the jury." Henry v. Horn, 218 F. Supp.2d 671, 705 (E.D. Pa. 2002). Further, the prosecutor's comments must not be considered in isolation, but rather must be evaluated in the context of the trial. Laird v. Horn, 159 F. Supp.2d 58, 129 (E.D. Pa. 2001).

In this case, the Superior Court agreed with the PCRA Court and quoted the PCRA court opinion as follows:

> According to Petitioner, neither Barbra Guzman nor Madelin Bing testified as to any threats made against them, or to any fears that they may have had in testifying at trial. However, there was testimony by both of these witnesses that they were scared of petitioner. (N.T. 1/22/07, pp. 53-54, 59-60). The comments made by the Assistant District Attorney are properly characterized as consistent with the evidence presented by the Commonwealth at trial or as fair comment countering the arguments of defense counsel underscoring both the burden of proof and the presumption of innocense. Moreover, the trial court instructed the jury that the arguments of counsel are not evidence. It is well settled that juries are presumed to follow the instructions of a trial court to disregard inadmissible evidence. Petitioner has not met his burden of proving that the effect of the remarks made by the Commonwealth so prejudiced the jury that they were unable to weigh the evidence objectively and recall their own recollection of what the witnesses said. As such, there is no merit to this allegation of error.

Respondent's Exhibit D (Superior Court Opinion) at pp. 5-6, quoting PCRA Court Opinion, 1/28/2008, at 5-6.

As the Superior Court found, the prosecutor's comments during closing argument regarding fear were made in response to defense counsel's comments made during closing argument and were supported by the record. As the state court noted, contrary to defense counsel's assertion, Guzman and Bing's testimony indicated that they were afraid. In closing argument, the defense stated as follows:

> There is no evidence that Miss Bing was threatened by anybody. There is no evidence of that.
>
> ... What Officer Rowe says, the one who's in here telling you about all the people who are making threats to Barbra Guzman, where there's no evidence of that, there's nobody arrested for making a threat to a witness.

13

Respondent's Exhibit D (Superior Court Opinion) at 7, citing N.T., 1/27/2004, at 32, 33-34.

However, as the state court found, contrary to defense counsel's argument, the record supports that the witnesses were afraid. Ms. Bing testified that she was scared and did not want to come to the preliminary hearing when she was subpoenaed. N.T. 1/26/2004, at 110-111. The Superior Court quoted the following testimony by Ms. Guzman, indicating that she was afraid:

| | |
|---|---|
| THE WITNESS: | ...Isn't my daughter's name and address supposed to be confidential? |
| THE COURT: | Yes. |
| MS. WATSON-STOKES: | Yes. |
| THE WITNESS: | Well, - - |
| MS. WATSON-STOKES: | Did I say it? |
| THE WITNESS: | He's got a copy in front of him, doesn't he? |
| MS. WATSON-STOKES: | I don't know. I know his attorney does. Are you concerned for your daughter's safety? |
| THE WITNESS: | You're damn right. Excuse my language. |

Id. at p. 8, quoting N.T., 1/22/2004, at 53-54.

In addition, Guzman also testified that she did not come to the preliminary hearing because she was afraid and Officer Rowe testified that Guzman was threatened at the crime scene. As a result, we agree with the state court's finding that the Commonwealth was properly rebutting defense counsel's comments with comments supported by the record.

The state court's findings that the remaining portions of the prosecutor's closing argument that Hill challenges were not improper, are also reasonable. The Superior Court noted that the Commonwealth did not misstate the law, but that "under the Pennsylvania Rules of Evidence, '[a]

14

statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter' is admissible as evidence." Respondent's Exhibit D (Superior Court Opinion) at p. 9, citing Pa.R.E. 803(1). As to Hill's claim that the Commonwealth made up law indicating that the jury could assume that a witness was threatened even if they said they were not, the court found that the entire comment informed the jury to determine the witness' in-court demeanor to determine credibility. The Court found that "the Commonwealth did not err by directing the jury to use its in- court observations to determine the credibility of witnesses." Id. at p. 11. In the last challenged comment, Hill asserts that the Commonwealth improperly appealed to the fears of the jurors. However, after considering the entire statement, the Superior Court found that the Commonwealth properly "called upon the jury to bring to bear their sensory observations, experience, common sense and logic upon the witness to assess credibility and to determine the truth and accuracy of both the out-of-court declarations and the in-court testimony." Id. at pp. 12-13 (internal citations omitted).

Finally, the Superior Court found that any prejudicial effect that the prosecutor's comments would have had would have been cured by the curative jury instruction the trial court gave to the jury. The trial court instructed the jury that arguments of counsel are not evidence and that they are the sole fact finders. As the Court noted, juries are presumed to follow trial court instructions not to consider inadmissible evidence. Id. at p. 15, citing Commonwealth v. Miller, 664 A.2d 1310, 1319 (Pa. 1995).

We agree that the challenged statements read in their entirety and in the context of the trial were not improper. Especially given the jury charges, the comments do not amount to prosecutorial misconduct. As a result, we do not find that counsel's actions in failing to object to these comments

15

fell below an objective standard of reasonableness. See <u>Strickland</u>, 466 U.S. at 691; <u>Holland v. Horn</u>, 150 F. Supp. 2d at 730 (failure to raise a meritless claim does not result in ineffective assistance of counsel). We do not find the state court's analysis of these claims to be an unreasonable application of, or contrary to, clearly established federal law and therefore, we must deny relief.

    b.    <u>Ineffective Assistance of Counsel for failure to Call Witnesses</u>:

In claims three and four, Hill argues that his counsel was ineffective for failing to call a rebuttal witness, Tamika Moore, and an alibi witness, Kyesha Majett. He claims that Tamika Moore would have testified that Madelin Bing told her that she did not know who shot the victim, but that she gave his name because she heard other people in the crowd say that it was petitioner. Hill claims that he informed his counsel and his counsel failed to investigate or make an attempt to locate her. Hill also claims that Kyesha Majett would have testified that she was with him at the time of the shooting, establishing an alibi for him.

Hill raised these claims in his PCRA petition. However, the PCRA Court dismissed his claims, finding that he failed to comply with the requirements of 42 Pa.C.S.A. § 9545(d)(1), by failing to present the required affidavits from the proposed witnesses, and the Superior Court agreed[1]. Hill presented affidavits signed by himself, not the proposed witnesses. The court also found that he had waived his claim because he stated on the record that there were no additional witnesses he wished to call. Respondent's Exhibit C (PCRA Court Opinion) at p. 6-7. The Superior

---

[1]Hill argues that the Pennsylvania statute requires a signed certification, but that it does not require that it be signed by the witness. However, as Respondent argues, we are bound by the state court's interpretation of its own statute, not Hill's.

16

Court agreed that Hill failed to submit affidavits or other evidence to show that the alibi and rebuttal witnesses existed and were willing to testify on his behalf and failed to make a prima facie case of ineffectiveness. Respondent's Exhibit D (Superior Court Opinion) at p. 18 (citing Commonwealth v. Lawson, 762 A.2d 753, 756 (Pa. Super. 2000)). The Superior Court further noted that "a defendant who voluntarily waives the right to call witnesses during a colloquy cannot later claim ineffective assistance and purport that he was coerced by counsel." Id.

Upon review, we note that the state court found the claims to be waived. If a petitioner presents a claim, but the state court refuses to address the merits of the claim for some procedural reason, the claim is procedurally defaulted. Sistrunk v. Vaughn, 96 F.3d 666, 673 (3d Cir. 1996)(citing Coleman v. Thompson, 501 U.S. at 750). If a state court finds a claim to be waived, it thereafter becomes procedurally defaulted, barring federal habeas review. See Werts v. Vaughn, 228 F.3d 178, 192 n. 9 (3d Cir. 2000). As a result of the state court's finding that Hill's claims of ineffective assistance for failing to call these two witnesses were waived, they are therefore procedurally defaulted for purposes of habeas review. See Coleman, 501 U.S. at 735 n. 1.

As set forth above in relation to claims five through seven, in order to survive procedural default in the federal courts, the petitioner must either "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Id. at 750. To establish the fundamental miscarriage of justice exception, petitioner must demonstrate his "actual innocence." Schlup v. Delo, 513 U.S. at 324, 115 S. Ct. at 865); Calderon v. Thompson, 523 U.S. at 559, 118 S. Ct. at 1503. Hill has not satisfied either exception. He has not even alleged, let alone proven, actual innocence. In addition, he has not demonstrated cause and prejudice to excuse the default.

Furthermore, as the state court also noted, Hill simply did not make the required showing for a claim of ineffective assistance of counsel for failing to call witnesses. He has not established that the state court's findings in this regard are unreasonable. To prevail on a claim for ineffective assistance of counsel for failure to investigate or call a witness, a petitioner must demonstrate: (1) that the witness existed; (2) that the witness was available; (3) that counsel was informed of the existence of the witness or should have known of the witness' existence; (4) that the witness was available and prepared to cooperate and would have testified on petitioner's behalf; and (5) that the absence of the testimony prejudiced the petitioner. Villoch v. Brooks, civ. A. No. 05-1913, 2006 WL 2715180, *1 (E.D. Pa. September 21, 2006) (citing Commonwealth v. Lawson, 2000 Pa. Super. 336, 762 A.2d 753, 756 (Pa. Super. 2000)). The court's reasoning that Hill failed to submit anything to demonstrate that the witnesses existed and were willing to testify on his behalf, is entirely reasonable and cannot be considered to be contrary to, or an unreasonable application of, federal law. Therefore, we must once again deny relief.

Therefore, I make the following:

## RECOMMENDATION

AND NOW, this 29th day of April, 2010, IT IS RESPECTFULLY RECOMMENDED that the Petition for Writ of Habeas Corpus be DENIED. There is no probable cause to issue a certificate of appealability. The petitioner may file objections to this Report and Recommendation. See Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:

_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE